# EXHIBIT A



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

WILLIAM PARKER
Vs.
NATIONAL RAILROAD PASSENGER CORPORATION

C.A. No.     2014 CA 005688 B

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge JOHN M MOTT
Date:   September 10, 2014
Initial Conference: 10:00 am, Friday, December 12, 2014
Location:   Courtroom 221
    500 Indiana Avenue N.W.
    WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

William Parker
_____
Plaintiff

vs.

National Railroad Passenger
Corp., d/b/a Amtrak
_____
Defendant

Case Number  14-0005688

## SUMMONS

To the above named Defendant:

  You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

  You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James R. Klimaski
_____
Name of Plaintiff's Attorney
Klimaski & Associates, P.C.
1625 Massachusetts Ave., N.W #500
_____
Address
Washington, D.C.  20010
_____
202.296.5600
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date   9/10/14

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

  IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

  If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

|  |  |
|---|---|
| WILLIAM PARKER<br>16065 Olmstead Lane<br>Woodbridge, VA 22101<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL RAILROAD<br>PASSENGER CORPORATION<br>d/b/a AMTRAK<br><br>Serve:<br><br>  Eleanor D. Acheson<br>  Vice President and General Counsel<br>  60 Massachusetts Avenue, N.E.<br>  Washington, D.C. 20002<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 14 - 0005688<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES
(Equal Employment Opportunity)

1. This is an action to vindicate the fundamental right against racial discrimination in employment secured by the District of Columbia Human Rights Act (DCHRA), D.C. Code §1401.01 *et seq.* (2001); and the Civil Right Act of 1866, 42 U.S.C. § 1981, as amended (Section 1981).

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to D.C. Code §2-1403.16 and 28 U.S.C. § 1343(a)(4). Venue lies in this Court: Amtrak is headquartered in Washington, D.C., and employed Plaintiff in its Police Department's canine (K-9) Division in Washington, D.C.

## PARTIES

3. Plaintiff William Parker (Parker) is an adult African American citizen of the United States residing in the State of Virginia.

4. Defendant National Railroad Passenger Corporation (Amtrak) is a private entity organized under the laws of the United States to provide rail travel for hire.

Upon information and belief Parker alleges the following:

## FACTS

5. Parker served as a military policeman during a distinguished career of more than 20 years in the United States Army, becoming expert in the training of police dogs and their handlers, and in the operations of a successful canine (K-9) unit.

6. Following his retirement from the Army in 1997, Parker took a position in the K-9 Division of the Washington Metropolitan Airports Authority.

7. Parker remained with the Washington Metropolitan Airports Authority until 2007, when he joined Amtrak as a Captain in the Amtrak Police Department's K-9 Division.

8. Parker had been asked to apply for the job at Amtrak, in the hope he could help correct serious deficiencies in the K-9 Division: Not a single officer was properly certified to handle dogs at the time, and the animals themselves were living in miserable conditions.

9. In the year after Parker became employed at Amtrak, no less than five officers at the Washington Metropolitan Airports Authority joined Parker in the Amtrak Police Department's K-9 Division. Among them was an African American female officer named Sarah Bryant.

10. Parker's performance in Amtrak's K-9 Division was exemplary. He received numerous commendations for his work upgrading the Division and its operations, and in very short order earned promotion to the rank of Inspector.

11. Parker described Amtrak's K-9 operations in Congressional testimony, giving an actual demonstration of a highly trained police dog sniffing out contraband concealed on the person of a "passenger" in the House chamber.

12. In just two years' time, Amtrak's K-9 Division went from woefully inadequate to a premier unit whose operations were being emulated around the country. Descriptions of the accomplishments achieved during Parker's tenure remain fixtures on Amtrak's website.

13. Amtrak has an unfortunate history of discrimination against African American and other minority employees, especially in its senior ranks, where officials have been and remain overwhelmingly white.

14. During his employment with Amtrak, Parker was one of very few African American in a senior management positions in the Police Department. There are now only three African Americans working in senior management positions, one of whom was hired after the termination of Parker's employment in November 2012.

15. Parker's tremendous and very public successes transforming Amtrak's K-9 operations also inspired tremendous resentment on the part of a number of white colleagues in the Police Department.

16. Several of these resentful white colleagues proceeded to make anonymous complaints about Parker to Amtrak's Office of Internal Affairs.

17. The anonymous complaints included allegations that Parker owned real estate and was in a personal relationship with – and giving preferential treatment to – Sarah Bryant, one of the officers with the Metropolitan Washington Airports Authority who followed Parker to Amtrak.

18. Amtrak's Office of Internal Affairs investigated these anonymous allegations against Parker, recording interviews with Parker in the process, and determined that he had violated no Amtrak policy or otherwise engaged in any misconduct.

19. John O'Connor (O'Connor), the Chief of Police at Amtrak, informed Parker that the Office of Internal Affairs cleared him of any wrongdoing, and simply cautioned him against any conduct giving rise to the appearance of a conflict of interest.

20. However, O'Connor retired a short time later. Parker's anonymous adversaries saw the Chief's retirement as a chance to breathe life into allegations that O'Connor had already deemed dead, and proceeded to make the very same charges of wrongdoing to Amtrak's Office of Inspector General (or OIG).

21. The Office of Inspector General – through some of the same employees involved in the earlier investigation for the Office of Internal Affairs – again interviewed Parker and his co-worker Sarah Bryant.

22. The Office of Inspector General this time found – based on the same allegations rejected just a short time before by Amtrak's Office of Internal Affairs and Chief O'Connor – that Parker and Bryant violated Amtrak policy, largely because the OIG deemed them to have been less than candid about an alleged joint ownership of real estate and other personal relationship in response to questioning.

22. OIG representatives failed to record responses from Parker or Bryant, which were virtually identical to the recorded responses they had made to representatives of the Office of Internal Affairs.

23. By letter dated November 19, 2012, Lisa Shehade, designated Acting Chief following O'Connor's retirement, proceeded to terminate Parker and Bryant on the basis of the OIG investigation, though the Office of Internal Affairs and O'Connor earlier found no wrongdoing on the basis of the same allegations, and though neither Parker nor Bryant had been subjected to any prior discipline at Amtrak.

24. Yet similarly situated white employees at Amtrak have engaged in conduct as or more serious than that ascribed to Parker and Bryant, and been subjected no discipline of any kind, or to disciplinary action less serious than termination.

25. On May 21, 2013, Parker filed a complaint with the D.C. Office of Human Rights alleging that Amtrak's termination of his employment was motivated by race.

26. On March 14, 2014, the D.C. Office of Human Rights granted Parker's request to withdraw the complaint pending before the Office.

27. As a member of the Fraternal Order of Police (FOP) representing officers of the Amtrak Police Department, Bryant was able to challenge her termination before an arbitrator designated under the FOP's Collective Bargaining Agreement with Amtrak.

28. The arbitrator found that Amtrak fired Bryant in violation of Amtrak policy and procedure, and directed that Amtrak reinstate and afford her other appropriate relief.

## CLAIMS

## COUNT I: DCHRA

29. Plaintiff reasserts paragraphs 1 through 28.

30. Plaintiff was well qualified to serve, and performed in exemplary fashion as a Captain and Inspector in the Amtrak Police Department's K-9 Division.

31. Defendant terminated Plaintiff on the basis of the same allegations found insufficient to warrant discipline of any kind by Chief O'Connor following an investigation conducted by the Internal Affairs Division, and did so as a direct and proximate result of racist attitudes and conduct on the part of white employees in the Police Department resentful of an African American official's extraordinary success reforming the operations of the Amtrak Police Department's K-9 Division.

32. Defendant subjected Plaintiff to discriminatory terms and conditions of employment and terminated him on account of race in violation of the DCHRA.

33. Defendant has engaged in discriminatory and unlawful employment practices which have been intentional, deliberate, willful, repetitive, systematic, and conducted in callous disregard of Plaintiff's rights.

34. As a direct and proximate result of the aforesaid conduct, Plaintiff has suffered discrimination based on race, and resulting physical, economic and reputational injury, as well as the mental distress that is the natural and probable consequence of a termination on grounds of race and consequent loss of livelihood.

## COUNT II: SECTION 1981

35. Plaintiff reasserts paragraphs 1 through 34.

36. Defendant has denied Plaintiff equal terms and conditions of employment, and subjected him to termination, all based upon his race and color, thereby violating rights secured by Section 1981 to make and enforce contracts on the same basis, and with the same freedom as is enjoyed by white citizens of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Parker respectfully prays that this Court:

A. Order the practices complained of herein to be adjudged, decreed and declared violative of rights secured by the DCHRA and Section 1981.

B. Order Defendant to make Plaintiff whole, through payment of back and front pay, and retroactive restoration of any attendant economic benefits lost, all with interest or an appropriate inflation factor, in amounts proved at trial;

C. Order that Defendant pay Plaintiff compensatory damages in the amount of Five Hundred Thousand Dollars;

D. Order that Defendant pay Plaintiff punitive damages in the amount of Five Hundred Thousand Dollars;

E. Grant Plaintiff reasonable attorneys' fees and costs; and

F. Grant such other and further relief as the Court may deem just and proper.

September 10, 2014                                KLIMASKI & ASSOCIATES, P.C.

_____
James R. Klimaski    Bar No. 243543
John P. Racin        Bar No. 942003

1625 Massachusetts Avenue, N.W.
Suite 500
Washington, D.C.  20036
202.296.5600

**Attorneys for Plaintiff**
**William Parker**

### JURY DEMAND

Plaintiff requests trial by jury pursuant to Rule 38 of the Superior Court Rules of Civil Procedure.

_____
James R. Klimaski

-8-